## ARCHIBALD *against* THOMAS, *impleaded with* VARNUM.

Bond, dated *July* 26th, 1815, with condition to pay $3000, with interest, as follows : $500, with interest, on the whole sum unpaid, from the 1st October, 1815, on or before the 1st October, 1816 ; and $500, more thereof, with interest, on the whole sum unpaid, from the 1st day of October next, on or before the 1st October, 1817; the residue ex-

DEBT on bond. The defence was usury, apparent on the face of the condition. The usury was pleaded in due form. The cause was tried at the *Warren* Circuit, *June* 17th, 1822, before his Honor (the late) Mr. Justice YATES.

On the trial, the execution of the bond was proved by one of the subscribing witnesses. It was executed by the defendants, payable to the plaintiff, dated *July* 26th, 1815, and in the penalty of $6000. The condition was as follows : " That if the above bounden *Joshua Thomas* and *Aaron Varnum*, their heirs, &c. shall well and truly pay or cause to be paid to the above named *James Archibald*, his executors, &c. 3000 dollars, with interest, as follows, to wit : 500 dollars, part thereof, with interest on the whole sum, from the 1st day of *October* next, on or before the 1st day of *October*, 1816 ; and $500 more thereof, *with interest on the*

pressed to be payable in instalments of $500 yearly in like manner ; *held*, not usurious on the face of the condition, though, upon one construction, every instalment would draw interest from the 1st *October*, 1815, notwithstanding it might have been previously paid ; and thus the 2d instalment might draw 14 *per cent.* interest, the 3d, 21 *per cent.* and so in that progression to the last ; but to avoid this consequence, *held*, that the words, " with interest on the whole sum *unpaid*," should rather be deemed to refer to the interest as well as the principal, and to mean that $500 was payable on the 1st *October*, 1817, together with the interest that accrued on the balance of principal subsequent to the 1st *October*, 1815, and remained unpaid.

Where a contract admits of two significations, that should be adopted which renders it operative, rather than that which renders it void.

If a contract is susceptible of two constructions, one of which will bring it within, and the other without the statute of usury, the latter construction should be adopted.

A contract reserving more than legal interest, on its face, is, *prima facie*, evidence of a corrupt agreement, which is the foundation of usury ; but this may be repelled by shewing that more than legal interest was reserved by mistake, e. g. a mistake of the scrivener in wording the bond, whether such mistake be of the fact or of the law.

The court have the exclusive power of deciding whether a contract be usurious on its face.

A contract to pay interest, generally, means the legal standard of interest.

*whole sum unpaid from the first day of October next,* on or before the 1*st* day of *October*, 1817 ; and 500 dollars more thereof, *with interest on the whole sum unpaid from the* 1*st day of October next,* on or before the 1*st* day of *October*, 1818 ; and 500 dollars more thereof, *with interest from the* 1*st day of October next, on the whole sum unpaid,* on or before the 1*st* day of *October*, 1819 ; and 500 dollars more thereof, *with interest on the whole sum unpaid from the* 1*st day of October next,* on or before the 1*st* day of *October,* 1820; and 500. the residue thereof, *with interest from the* 1*st day of October next, on the whole sum unpaid,* on or before the 1*st* day of *October,* which will be in the year of our Lord 1821, without any fraud, &c. then, &c. otherwise, &c."

The counsel for the defendant then submitted whether the defence was not made out by the reading of the bond, as the plea, alleging usury, adopted the very words of the condition, and the plaintiff, by his general replication, admitted that the plea was competent ; and thereby putting in issue the facts only which were proved by the bond and condition underwritten ; that if the plaintiff had intended to take issue on the inferential averment, that the agreement was corrupt and usurious, he should have answered by demurrer : but the Judge decided that the replication put in issue not only the facts pleaded as constituting the usury, but the averment of the plea that the agreement was usurious. The counsel for the defendant then proposed going to the jury upon the evidence of usury afforded by the bond. This the Judge refused to permit, deciding that, as the bond was the sole evidence upon the point, the question was one of law—not of fact ; and belonged to the Court—not the jury. He thereupon gave his opinion, that the word *unpaid* in the condition of the bond qualified the words which immediately preceded it ; and that the interest was intended by the parties to be computed, after the payment of one of the instalments, on the whole sum unpaid only, and not on the whole sum of 3000 dollars ; and the jury, pursuant to his direction, found a verdict for the plaintiff.

UTICA,
Aug. 1824.

Archibald
v.
Thomas.

*H. B. Davis*, for the defendants, now moved for a new trial. He repeated the arguments used before the Judge at the Circuit ; and added, that the objection did not rest upon the bond, carrying usury for too large a sum, but for too long a time. The condition is palpably usurious on its face, if the words used are to be taken in their ordinary import. The excess reserved is enormous ; and, on a calculation, the Court will perceive that it will exceed $1200. The Court have nothing to do with any supposed mistake of these parties. They are confined to the face of the contract ; or, if going out of it upon evidence *aliunde*, would be tolerated, there is here no such evidence, from which the usurious intent can be explained away. It will not be pretended that the Court can take judicial notice of a mistake, whether of the law or of the fact, in the scrivener who drew the bond. If there was any such mistake, the burthen of shewing it lay with the plaintiff ; and the Judge erred in not requiring this. In either view of the case, the jury should have been permitted to pass upon the issue. The question whether there was a corrupt agreement within the statute of usury was one of fact—not of law, as decided by his Honor. If it appear, on the face of the contract, that more than legal interest was reserved, this is *prima facia* evidence, at least, that the contract was usurious ; and the jury should have been directed so to consider it.

If we are correct in supposing that the parties are concluded by the face of the contract, then the plaintiff should be non-suited. There can be no use in going back to a new trial ; because no other evidence can be given, and no other view taken of the subject than what is already before the Court.

*R. Weston*, contra. The Judge was right at the trial, in not suffering the jury to pass upon the question; because the proof of usury was the written contract only. This was susceptible of construction ; and the construction of contracts belongs to the Court, and not to the jury. The contract, upon the face of it, is not usurious. The statute declares all contracts to be void, on which more than seven *per cent*

shall be reserved, &c. In this case, there is no *specific sum* agreed upon as interest, exceeding the rate of 7 *per cent.* nor is there any *rate or per centage* agreed on ; one of which is necessary, to bring the contract within the statute. The *quantum* of interest is thus left by the parties to be fixed by the Court; and it would be absurd to say, when, by the agreement, the parties leave it to the *law* to determine how much interest shall be paid, that the parties thereby intended to violate the law. The intent of the parties is to govern——and not the words used. (*Bac. Abr. tit. Usury,*(*D*) 4. *ib.*(*C*) 23. *Cro. Eliz.* 642. *Cowp. Rep.* 770.) The parties meant annual interest. The blunder arose from the fact that interest commenced 3 months after the date of the bond. The innocence of the intent is also inferable from that circumstance. The debt is honestly due ; and Courts incline to such a construction as will take the contract out of the statute of usury. (*Bac. Abr. tit. Usury,*(*C*) *note to pl.* 4. *ib.*(*K*) 12.)

In construing the bond, the word " *unpaid*" may be understood to relate to the *interest* as unpaid, and not to the principal, Thus : " interest on the whole sum whereon interest shall remain unpaid." Or the words " from the first day of *October* next," may be construed to relate to the last antecedent, viz. " whole sum," and not to the interest ; or these words may be rejected as unmeaning.

The plea of usury always sets up a previous agreement to pay a particular sum ; and that, in pursuance of such corrupt agreement, the contract in question was entered into, &c. ; and this agreement must be proved precisely as pleaded. But, here, the defendant produces no proof of a corrupt agreement, and relies on the bond, which is indefinite. This cannot support the plea. If the usury is apparent on the face of the instrument itself, the defendant ought to demur. If not apparent, he must plead the usurious agreement, and prove it on the trial by evidence *dehors* the contract. (*Cro. Car.* 501. *Bac. Ab. Usury,*(*K*) *pl.* 14.)

If the opinion of the Court should be against the plaintiff, then a new trial must be awarded for the misdirection of the Judge, to give the plaintiff an opportunity of proving the

UTICA,
Aug. 1824.

Archibald
v.
Thomas.

mistake of the scrivener. This he may do on the trial. (*Vid,*
*Cro. Car.* 501. *Bac. Ab. Usury,*(*K*) 4, *already cited; and*
*Cro. Jac.* 678.)

*Curia,* per WOODWORTH, J. This is an application for a
new trial. The plaintiff commenced an action of debt on
bond, dated 27*th January,* 1815, conditioned to pay $3000,
with interest, as follows : $500, with interest on the whole
sum, from the 1*st* day of *October,* 1815, on or before the 1*st*
*October,* 1816 ; and $500 more thereof, with interest on
the whole sum unpaid, from the 1*st* day of *October.* next, on
or before the 1*st October,* 1817. The residue is payable in
instalments of $500 yearly in like manner. The case states,
that the pleas, alleging the usury, adopted the language of the
condition of the bond, to which the plaintiff filed a general
replication. The counsel for the defendant contended that
the facts pleaded were proven by reading the bond. No
other evidence was introduced. The Judge directed the
jury to find a verdict for the plaintiff.

Several questions were raised on the trial, not necessary
to be stated. The question is, whether, on the preceding
facts, the plaintiff was entitled to recover. The plea is not
set out ; but it is presumed to be in due form, averring a
corrupt agreement to lend money, payable at the times, and
with the interest specified in the condition of the bond ; and
that in pursuance of such corrupt agreement the bond was
executed. The replication is not before us. It is stated to
be general, and must be considered as putting in issue the
allegation of usury.

If, by a sound construction of the bond, it reserves more
than legal interest, then the usury is made out *prima facie.*
For, without further proof, the reservation of unlawful inter-
est will be considered as evidence of a corrupt agreement,
which is the foundation of usurious contracts. But it was
competent for the plaintiff, at the trial, to repel the *prima
facie* evidence of a corrupt agreement, arising from the face
of the bond, by showing, if in his power, that more than the
rate of interest was reserved by mistake, and contrary to
the intent of the party. This was done in *Nevison* v. *Whit-*

*by*, (*Cro. Car.* 501.) So also in *Bush* v. *Buckingham*, (2 *Ventris*, 83,) the agreement was to lend £50; and the scrivener. by mistake, drew a bond for more than legal interest, against the will and without the knowledge of the lender; yet he was held entitled to recover. In such case, it makes no difference whether the scrivener be in an error in fact or of law, as if the security bears a different construction in point of law from what the parties intended. Such mistake will not prejudice the lender, where his intention was incorrupt. (*Buckley* v. *Guildbank*, *Cro. Jac.* 677.)

The remaining inquiry, then, is, what is the legal construction of the words used in the condition? The principal is payable in six yearly instalments of $500 each, from the 1*st October*, 1815. It is contended that in all the instalments, payable after the first, interest is reserved from the 1*st October*, 1815. If the words of the bond require this construction, then more than legal interest is reserved. Thus, on the 1*st October*, 1817, the defendants were bound to pay $500 principal, and interest on $2000, the residue of the principal, for two years, although the interest for one of those years had been paid on the 1*st October*, 1816. A covenant to pay interest, generally, means the legal standard of interest, which is seven *per cent.* and consequently, on this construction, more than legal interest was reserved. If the condition is susceptible of a fair construction, not at variance with the statute, it is the duty of the Court so to construe it. They have the exclusive power of deciding whether a written contract be usurious. (*Levy* v. *Gadsby*, 3 *Cranch*, 180.) There is some obscurity in the words used. I think it highly probable the parties merely intended to secure the payment of interest annually on such parts of the principal as remained unpaid at the time each instalment became due. If interest is to be calculated from the 1*st October*, 1815, the consequence is, that, at the end of the second year, the plaintiff is entitled to interest at the rate of 14 *per cent.* for one year; at the end of the third year 21 *per cent.* and thus increasing annually, until the end of the last year, when, for the last $500, 35 *per cent.* interest for one year might be demanded. However oppressive may be this premium for forbear-

UTICA,
Aug. 1824.

Archibald
v.
Thomas.

ance, or great the difficulty in assigning a cause for increas-ing the rate of interest each successive year, the Court can-not, on this ground, depart from the construction which the words of the condition import.

It is a well settled rule, in the interpetration of contracts, that when a clause is capable of two significations, it should be understood in that which will have some operation, rather than in that in which it will have none. (*Poth. on Obl. pt. 1, c. 1, s. 1, art. 7. 2 Com. on Con. 532.*)

If the word "unpaid" relates only to the principal money, then it is clear that interest is to be calculated at the end of every year from *1st October*, 1815. But if, in the expression, " with interest on the whole sum unpaid," it has also reference to the interest as well as the principal, no more than legal interest would be reserved. The meaning of the sentence would, in that case, be, that $500 was payable on the *1st October*, 1817, together with the interest that accrued on the balance of principal, subsequent to the *1st October*, 1815, and remained unpaid. I think the words will admit, and ought to receive this construction, rather than that urged by the defendants. I have little doubt it is conformable to the intention of the parties. But my opinion is placed on the ground, that where a contract admits of two significations, that ought to be adopted which renders it operative, rather than that which renders it null and void. If this conclusion be correct, the plaintiff was entitled to a verdict; if not, then the verdict ought to be set aside and a new trial granted.

I am of opinion that the motion for a new trial be denied.

Motion denied.